Good morning. Welcome to the Ninth Circuit. My colleague Judge Graber and I would like to welcome and thank Judge Lefkoe who is sitting with us for several days this week. It would be very hard for us to do our job unless we had people like Judge Lefkoe who are willing to sit with the Ninth Circuit, so thank you. We have several cases that have been submitted on the briefs. Gonzales-Loera v. United States is submitted on the briefs. Guatagama v. United States is submitted on the briefs. Yamine v. Toolbox is submitted on the briefs. We have three cases set for argument today. The first one is Nava-Patricio v. Garland, and I believe the counsel for the government is appearing by video, yes? But I don't see them. Yes, Your Honor. Great. Thank you. Okay, can you hear us okay? Yes, very well. Thank you. All right, so we'll hear from Petitioner. Good morning. May it please the Court? Siobhan Ayala on behalf of Mr. Nava-Patricio. We ask that the Court grant this petition for review and send the case back to the judge for further development of the record. The immigration judge engaged in a faulty review of the underlying claim. The judge was confused about his role in what he was doing. He didn't conduct a de novo review. He said the Court will only review the testimony provided to the asylum office. But then he proceeded to do something that's totally inconsistent with that. He talked to your client. He asked questions of your client. He asked your client whether he had anything to add. He asked your client if he had been truthful and complete to the asylum officer. So I agree, and I'm going to be asking your friend about that remark, but the judge didn't proceed that way. Well, Your Honor, he didn't ask the petitioner very much about it. It was a very short hearing, and he said, for instance, the petitioner said, I don't have a lawyer, but I plan to get a lawyer, and I also have proof with me of what happened, and the judge doesn't even respond to that. He asked whether the material that he had went beyond what he told the asylum officer. Do we have any way to know that? Yes, it was. It was a death certificate of his uncle. It was articles about the town, and then it was also that letter from the prosecutor from that town. So why? That's basically the city attorney, and he told the asylum officer that that went to harm in general, not his specific case. So it was that letter? Yes, it was that letter. Additionally, he did testify, it's at AR-30, that the police weren't doing much in his town, that it was corrupt. So all of that goes to whether or not he could potentially have a claim under protection of the Convention Against Torture. So for those other documents beside the Municipal Council letter, why didn't he give them to the asylum officer? Well, he didn't have them at the time, my understanding, at the asylum office level. He tried to give the document from the prosecutor's office to the asylum office. However, the asylum office didn't even accept it. The reasonable fear interview is conducted by phone. So it's not even possible for him to hand that stuff over to the asylum office. And you're saying that he tried to give it to the asylum office and they refused to take it? Yes, he did mention it during the interview. Well, he mentioned the council letter. He didn't mention the other thing. He didn't mention the other evidence, right. I'm not sure if he had that other evidence at the time of the asylum office interview. But the courts have said that if there is more evidence, then the immigration judge has the authority to consider that evidence. And if the evidence is probative, it's an abuse of discretion not to consider it. Another issue, I with the immigration judge was only four days after he got the decision from the asylum office. And the judge doesn't ask him even if he wants a continuance. And he does say he wants an attorney. The importantly, the IJ decision, just on its face, it doesn't even explain what possible grounds were considered. And it doesn't mention the protection of the Convention Against Torture. Is the IJ required to do that? Isn't it perfectly appropriate for the IJ to say, I've looked at what the asylum officer said and I agree with the what the asylum officer said and why? Well, the only there was about four words that the judge said in his decision. It said no PSG or protected ground. And so it didn't even mention, like I said, protection of the Convention Against Torture. This decision is subject to review. So I think implicitly it would not include can't relief because a protected ground is not required for can't relief. Right. Or a particular social group. Exactly. Are there magic words that the asylum officer has to use? You mean the judge? Yes. I'm sorry. The judge. Yeah. Well, I mean, just to let the court know that he considered protection of the Convention Against Torture. I mean, it's not even listed as something that he considered. Well, but it says here at page five of the transcript, I guess, that's nine. My job is to review what the asylum officer did and determine whether or not their was correct. They appear to have done a diligent job. I find they reached the proper conclusion in the context of controlling laws for the reasons articulated. Is there any case that says the judge is required to do more than that? Yes. For instance, in Ojeda, the court found that the judge it was an abuse of discretion for the judge not to consider new evidence that was brought up. It was a non-exercise of discretion because similar to here, the judge seemed to think that no new matters could be brought up. Exactly. At least, you know, part of what I maybe I should save this for opposing counsel, but it seems to me that when there is a pro se litigant, when someone says, I'm only going to review what you give to the asylum officer, I mean, I wouldn't try to put in anything else. Right. Exactly. I mean, the judge could have asked questions about the fact that he had a family member that was murdered. The asylum office didn't even ask follow-up questions. He said the asylum office asked, do you think you are in danger because of your, I'm paraphrasing here, because of your family relationship? And he said, I'm not sure. So the standard is not 100 percent that he be sure, but it is 50 percent. And the asylum office, they didn't ask, do you have any physical resemblance to your uncle? How close were you to your uncle? Are you is was your uncle well known in the town? So there's lots of questions that are left for a full merit hearing that he should be given the opportunity to present on which he wasn't. So I have two and a half minutes left. I just wanted to reserve that for rebuttal. That's fine. OK, thank you. We'll hear from the government. OK. May it please the court, Brooke Maurer for the attorney general. I wanted to start and address specifically the proffering of evidence that petitioner, if you notice in both the opening brief and the reply brief, petitioner failed to demonstrate or identify any of the evidence that she had intended to present. And for the first time before the court indicated there was a death certificate and articles, we know why. Why does that matter? Because the petitioner said, I have proof with me, I have more information with me. And it seems to be that the this was just simply rebuffed without any, you know, is it new? Is it different? Is it important? Nothing. But I read what the what the IJ said is reasonably understood to mean I'm not going to look at anything that the asylum officer didn't already look at. So why would a pro se petitioner argue with that? I mean, no, that they're supposed to make a record of what they have with them. I think that it's that he was like blocked from putting anything there. There's nothing in the record that showed that he even tried. And I understand what you're saying. And the asylum officer even identified and addressed the statement from the council in the municipality where he lived, stating that it was a document that was created that basically fortified the making that there was in fact a Los Ordelos gang. It was in fact like in the town. And they took that as credible just as they took his testimony as being credible. So I don't I'm sorry, you can go ahead and finish your answer. No, no. And I just said, I mean, it's outside of it would be in augmentation, but the same as the same credible testimony that he was providing to the asylum officer and to the immigration judge. So I'm concerned about the statement by the IJ at AR7. While the court has a regional review over the asylum officer's decision, the court will only review the testimony provided to the asylum officer in reaching his or her decision. Now, that statement is an incorrect statement of what the law requires. Yes, that is correct. I believe that that was not properly stated. But and then the petitioner and the immigration judge clearly went forward and addressed everything that was presented and then asked petitioner if there were additional things that he wanted to submit in addition to what he had stated to the asylum officer. Well, I mean, I agree with you that what he did was inconsistent with his statement. But with a pro se petitioner, with this incorrect statement of law, why shouldn't we send it back to allow the petitioner to have a hearing untainted by this possible legal error? Well, I believe that what the asylum officer did and like his analysis and the claim that was presented for them was far sufficient and that sending it back would not present any type of different. No, but my concern is the legal error that is inherent, which I think you've candidly said was a wrong statement at page seven. And for a pro se then respondent, why wouldn't the respondent have taken this at its face that the asylum that the IJ is saying all I can look at, all I the IJ can look at is what you told or gave the asylum officer. And so if he had this death certificate or something else with them, a pro se litigant could have reasonably assumed. There's no point in my saying anything other than I have something because he's already told me he wouldn't look at it. I believe the government doesn't take the view that this was like foreclosed because he kept repeatedly asking him if there is anything in addition that he would like present. But that's contradictory. At least it's murky. And it certainly seems that, you know, it's a little bit like a lawyer who's told definitively, I will not accept this evidence. And, you know, usually you drop it. You can raise it on appeal, but you don't keep asking the same thing. I have another concern, too, and that is the immigration judge's order at AR1, I believe. And it says the immigration court concurs in the DHS reasonable fear determination because no protected ground or PSG, meaning particular social group. That ruling on its face can't be about a potential cat claim because it doesn't require either a protected group or a PSG. So why isn't this an incomplete order on its face? Because it doesn't demonstrate that cat relief was considered. Even full reading of it, if you look at it, it says, you know, obviously it says he's not been persecuted on the basis of a protected ground or a reasonable and then it says, comma, or a reasonable possibility that the non-citizen would be tortured in the country of removal. Doesn't that, what you just read, doesn't that mean no cat? Yes, that would be correct. So that would be an extension. It would be both. And he checked both boxes, right? I mean, he checked the box. Yes, he checked the order that basically stated that he has not established that first box and then that second one was like basically the on account of determination that there wasn't anything for withholding with removal. If there's no further questions, the government can rest on its briefs. All right. Thank you. You have some time left for rebuttal. We would just continue to argue that the, even though the box was checked in the order, that it doesn't adequately consider what happened. And I understand the court's points about the fact that there was a conversation. However, the immigration judge, if you read his summary of the events, it is word for word from the reasonable fear interview. So he doesn't actually get his information from the petitioner. He gets it from the reasonable fear interview. Well, I mean, isn't that just because he says he's heard you, he knows, he said, I heard you. I know that you have a fear, but I think the asylum officer got it right. And then he discusses some of the reasons, right? Well, the reasons, right. He just basically gives a summary, the summary that the asylum officer gave. And so he repeats the summary from the asylum officer. But isn't that what he's supposed to do? Yes, de novo review. But if he thinks the asylum officer got it right, isn't it okay to say, I think the asylum officer got it right? How would he know that the asylum officer got it right other without having a meaningful conversation with the petitioner, which he doesn't really engage in? The for another issue is in the summary that the immigration judge does, which he, he doesn't, he says his uncle was murdered, but he doesn't say that he, the petitioner is afraid because of the uncle being murdered. And the petitioner is, is clearly afraid because the uncle was murdered. So if that's it, I just don't have any more. All right. Thank you. We thank counsel for their arguments and the case just argued as submitted.
judges: GRABER, BENNETT, Lefkow